Louis DeSALLE, Plaintiff–Appellant,

v.

Kevin W. WRIGHT, Jere E. Fridheim, M.D., Arvid K. Goyal, M.D., Nikki M. Zollar, et al., Defendants–Appellees.

No. 91–2050.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1992.

Decided July 16, 1992.

Alan Rhine (argued), Terrance A. Norton, Augustine & Kern, Chicago, Ill., for plaintiff-appellant.

Jennifer A. Keller, Asst. Atty. Gen., Civ. Appeals Div., Chicago, Ill. (argued), for defendants-appellees.

Before CUMMINGS, CUDAHY and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

Louis DeSalle, an unsuccessful applicant for a temporary medical license, commenced this action under 42 U.S.C. § 1983 against Kevin Wright,[1] the (former) Director of the Illinois Department of Professional Regulation, and certain members of the Illinois Medical Licensing Board alleging violations of his constitutional rights to equal protection and due process. We must decide whether DeSalle successfully stated a cause of action against the defendants.

## I.

We review the grant of a motion to dismiss *de novo*, accepting as true all well-pleaded factual allegations and drawing inferences in favor of the plaintiff. *Prince v. Rescorp Realty*, 940 F.2d 1104, 1106 (7th Cir.1991). The allegations are straightforward.

Louis DeSalle attended the University of Illinois School of Medicine (the U of I) from September 1972 through December 1977. During those five years at the U of I, DeSalle successfully completed all of his course work, including his core clinical rotations,[2] but he did not graduate. Later, DeSalle enrolled in Spartan Health Sciences University, an unaccredited, foreign medical school.[3] Spartan credited DeSalle for his studies at the U of I, and after requiring DeSalle to complete an additional forty-four weeks of clinical training, Spartan awarded DeSalle an M.D.

Intending to begin his postgraduate residency training at Cook County Hospital in Chicago, DeSalle applied to the Illinois Department of Professional Regulation (the Department) for a temporary medical license. Although DeSalle submitted an official transcript from the U of I with his

---

**1.** Nikki Zollar has succeeded Kevin Wright as the Director of the Department, and we have re-captioned the case accordingly. *See* Fed. R.App.P. 43(c)(1). Nonetheless, DeSalle sued Wright in his individual capacity as well as his official capacity. Thus Wright is still a proper defendant in this case.

**2.** Core rotations consist of clinical training in which students rotate through hospital depart-

ments in five subjects for periods of four to twelve weeks. *See* Ill.Admin. Code tit. 68, §§ 1285.20(d) & (h).

**3.** The complaint does not specify, but counsel told us at oral argument that Spartan is located somewhere in the Caribbean. Independent research reveals the school's location as the balmy isle of St. Lucia. *See* footnote 4.

application, the Department wrote to De-Salle requesting that he provide the Department with a detailed explanation of the courses he successfully completed at the U of I. The Department also requested that DeSalle attend an interview with the Illinois Medical Licensing Board (the Board) but did not inform him about the specific issues to be raised at the interview.

After interviewing DeSalle and reviewing his application the Board voted to recommend denial of DeSalle's application. Acting on the Board's recommendation, the Director rejected DeSalle's application for a temporary license.

DeSalle brought this action against the Department and the Board under 42 U.S.C. § 1983, alleging violations of his right to equal protection and due process. The district court dismissed the action under Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. We affirm.

## II.

A. *Equal Protection*

DeSalle challenges the constitutionality of the Illinois Medical Practice Act (the MPA or Act), Ill.Rev.Stat., ch. 111, ¶ 4400-1 *et seq.* (1991), alleging that the Act arbitrarily discriminates against graduates of foreign medical schools. DeSalle specifically challenges the education requirements of the Act.

An applicant for a temporary medical license must satisfy the professional education requirements in Section 11 of the Act. ¶ 4400-17(c) (referring to ¶ 4400-11). Section 11 establishes minimum standards for three different classes of applicants: (1) graduates of unaccredited medical schools, ¶ 4400-11(A)(2)(a)(i); (2) graduates of accredited medical schools, ¶ 4400-11(A)(2)(a)(ii); and (3) applicants who have completed the requirements of a foreign medical school and who have then completed one year of clinical training at an accredited medical school, ¶ 4400-11(A)(2)(b). Since Spartan is not an accredited medical school and DeSalle has not completed one year of additional training at an accredited

school, DeSalle is in the first category. Applicants in this category, unlike graduates of accredited medical schools, must have completed their core clinical rotations at a clinical facility affiliated with the medical school from which they take their degree. ¶ 4400-11(A)(2)(a)(i). DeSalle claims that this requirement is arbitrary and irrational and violates the equal protection clause.

The equal protection clause requires that all similarly situated persons be treated in a similar manner. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Unless the challenged statute involves a suspect classification or impinges upon a fundamental right, however, the statute need only rationally relate to a legitimate state interest. *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516-17, 49 L.Ed.2d 511 (1976); *Illinois Health Care Ass'n v. Illinois Dept. of Public Health*, 879 F.2d 286, 288 (7th Cir. 1989). The classification at issue distinguishes between graduates of accredited medical schools and graduates of unaccredited medical schools for purposes of qualification for medical licenses. We have consistently deferred to legislative judgment in cases involving the regulation of licensed professions. *Sutker v. Illinois State Dental Soc.*, 808 F.2d 632, 635 (7th Cir.1986); *see also Maguire v. Thompson*, 957 F.2d 374, 376 (7th Cir.1992) (medical licenses for practitioners of naprapathy). Consequently, the district court correctly evaluated the statute using a rational basis analysis.

Under the rational basis test, the court presumes that the classification is constitutional, and the plaintiff bears the burden of demonstrating that the classification at issue furthers no legitimate public interest. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 465-66, 101 S.Ct. 715, 724-25, 66 L.Ed.2d 659 (1981); *Oriental Health Spa v. Fort Wayne*, 864 F.2d 486, 490 (7th Cir.1988). There is no question that a legitimate state interest is at stake here: as we recently held in *Maguire*, the minimum education standards set out in the MPA are designed to protect

the public from unqualified medical practitioners. 957 F.2d at 377.

While the state interest is plainly legitimate, the statute must, in order to satisfy the equal protection clause, rationally relate to the advancement of that interest. *Oriental Health Spa,* 864 F.2d at 491. DeSalle argues that the Act arbitrarily and irrationally discriminates against graduates of unaccredited medical schools by forcing them to complete their core clinical rotations at the schools from which they graduate. In response to the State's argument that the requirement furthers continuity of medical education, DeSalle asks why the same requirement is not imposed on graduates of accredited medical schools and why Illinois allows students at unaccredited medical schools to transfer credits for ordinary course work. Finally, DeSalle notes that had he done his clinical rotations at Spartan, he would have satisfied the statutory requirements for a temporary license. In effect, DeSalle has been penalized for doing his clinical rotations at an accredited school—a result that seems irrational.

■ At the outset, we note that the issue is not whether DeSalle himself is a competent physician. The fact that a statute works a hardship on a particular individual does not make it unconstitutional. *Whitfield v. Illinois Board of Law Examiners,* 504 F.2d 474, 476 (7th Cir.1974) (per curiam). Further, a statute "need not be in every respect logically consistent with its aims to be constitutional." *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955). This court will uphold the state regulatory scheme if it finds any conceivable or plausible basis for the distinction. *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461–62, 66 L.Ed.2d 368 (1980); *Vance v. Bradley,* 440 U.S. 93, 111–12, 99 S.Ct. 939, 950, 59 L.Ed.2d 171 (1979). It is "constitutionally irrelevant" whether the hypothesized basis for the rule actually motivated the legislative action. *Flemming v. Nestor,* 363 U.S. 603, 612, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960).

■ The central issue is whether there exists a difference between unaccredited schools and accredited schools that could be the basis for the classification made by the legislature. We think such a difference exists. The legislature could have concluded that the process of accreditation provides some guarantee that a school will provide a coherent course of medical education. A degree conferred by an unaccredited school carries no such guarantee. The legislature could have refused to issue medical licenses to any graduates of unaccredited schools, but it decided to impose additional educational requirements on them instead. Thus the legislature could have concluded that requiring clinical work to be done at the school conferring the degree is a reasonable proxy for the guarantee provided by the accreditation process. The further distinction the State has made between credits for clinical rotations and credits for ordinary course work may reflect the greater difficulty of evaluating clinical work. Course work is easy to evaluate from afar, since credits are based on written examinations; clinical work requires subjective evaluation by an observer. The legislature could reasonably trust unaccredited schools to make the first evaluation when transferring academic credits, but not the second.

DeSalle's last argument on this point is that the Act arbitrarily discriminates between graduates of Canadian medical schools and graduates of other foreign medical schools. But the Act does not distinguish between foreign and domestic medical schools, rather the distinction is between accredited and unaccredited schools. Foreign medical schools for the most part are unaccredited, but many Canadian medical schools are accredited by the same bodies that accredit American schools. Thus, because the Canadian medical schools are accredited and accreditation ensures a certain level of continuity and coherence in medical education, the legislature may have rationally concluded that graduates of accredited Canadian schools are indistinguishable from graduates of other accredited schools.

In sum, accepting the truth of the plaintiff's factual allegations, we cannot say that the district court erred in finding that a rational relationship exists between the classifications of medical school graduates and the corresponding educational requirements. While the scheme may not completely accomplish its intended end, it certainly advances a reasonable governmental objective, and that is all that the equal protection clause requires.

### B. *Due Process*

 DeSalle alleges that the Board's failure to provide him with adequate notice of the issue to be addressed at his interview amounted to a violation of due process. But the right to procedural due process preserved in the Fourteenth Amendment applies only to the deprivation of a liberty or property interest. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Wroblewski v. Washburn,* 965 F.2d 452, 454 (7th Cir.1992). To have a protected interest, a person must have a legitimate claim of entitlement to the benefit. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. In *Becker v. Illinois Real Estate Administration and Disciplinary Board,* 884 F.2d 955, 957 (7th Cir.1989), *cert. denied,* 493 U.S. 1088, 110 S.Ct. 1154, 107 L.Ed.2d 1058 (1990), we held that an individual who successfully satisfies the statutorily mandated educational requirements for a professional license and who passes a state-sponsored examination has a protected interest in pursuing his profession. In contrast, DeSalle has no such claim on a temporary license. Section 17 of the MPA conditions the right to a temporary license on the applicant's ability to satisfy the objective educational requirements of section 11. ¶ 4400–17. Because DeSalle failed to qualify for a license under the plain requirements of the Act, he has no claim of entitlement, and consequently he has no protected interest. Therefore, because DeSalle does not allege facts that suggest a deprivation of liberty or property under the Fourteenth Amendment, his procedural due process claims fails.

### C. *District Court Errors*

 DeSalle alleges that the district court improperly relied upon matters not contained within the four corners of the complaint when dismissing his claim. But we review the sufficiency of the complaint for ourselves, and we make our determination on the merits unfettered by the mistakes of the district court. *Kush v. American States Ins. Co.,* 853 F.2d 1380, 1382 (7th Cir.1988). In any event, the district court made no mistake here. Concededly, Judge Shadur noted that his own research revealed why DeSalle did not graduate from the U of I: DeSalle failed his senior certifying examination at the U of I (and then sued). *DeSalle v. Wright,* 762 F.Supp. 229, 230 n. 6 (N.D.Ill.1991) (citing *Craft v. Board of Trustees of the University of Illinois,* 516 F.Supp. 1317 (N.D.Ill. 1981)). There is absolutely no hint in Judge Shadur's careful opinion that he relied on this fact in judging the complaint insufficient.[4]

 Finally, DeSalle contends that the district court erred in dismissing his action without affording him an opportunity to amend his complaint to state when he attended Spartan, the reason he did not graduate from the U of I and the issue raised in his interview with the Board. Under Rule 15(a), leave to amend "shall be freely granted when justice so requires." Fed. R.Civ.P. 15(a). The decision to deny leave

---

4. It is with a similar innocuous academic interest that we note that Spartan Health Services University, a school which reportedly employs two full-time professors and cautions its students to bring their own microscopes, has been embroiled in a bitter fight with the California Board of Medical Quality Assurance. *See* Phillip Elmer–DeWitt, *A Crackdown in the Caribbean: Why Medical Schools Are Becoming Outcasts of the Islands,* Time, June 4, 1984, at 48. In October 1984, the California Board banned graduates of Spartan from receiving physician licenses because their alma mater allegedly issues fraudulent credentials and offers substandard training programs. United Press International, Oct. 4, 1985. Nevertheless, it does not matter to our decision, or to Judge Shadur's, whether DeSalle left the U of I because he failed his examinations or whether he packed up his microscope and went south to exchange the harsh Chicago winters for the more inviting climate of the Caribbean.

278

to amend lies within the discretion of the district court. *Glick v. Koenig*, 766 F.2d 265, 268 (7th Cir.1985). A district court does not abuse its discretion when it denies leave to amend where repleading would be futile. *Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir.1989). None of DeSalle's proposed amendments are relevant to his claims, and thus to allow him to amend his complaint would have been just such a futile act.

### III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.