Barbara and Gregory MITCHELL,
Plaintiffs,

v.

COLLAGEN CORPORATION, Defendant.

No. 2:93 CV 283 JM.

United States District Court,
N.D. Indiana,
Hammond Division.

Nov. 7, 1994.

David Cerven, Joseph Costanza, Sr., East Chicago, IN, for plaintiffs.

Jon Schmoll, Merrillville, IN, Joe Redden, Jr., Houston, TX, for defendant.

## ORDER AND MEMORANDUM OPINION

MOODY, District Judge.

This is a diversity action in which plaintiffs, the Mitchells, allege that Barbara Mitchell was injured by injections of collagen compounds, Zyderm and Zyplast, manufactured by defendant Collagen Corporation ("Collagen"). The Mitchells seek recovery under several alternative Indiana tort law theories. Before the court for decision is a motion for summary judgment filed by Collagen, and two motions filed by the Mitchells seeking to amend their complaint.

### Motions to Amend Complaint

In both motions the Mitchells seek to add to their complaint a claim that Collagen has violated provisions of the Indiana Deceptive Consumer Sales Act, Ind.Code §§ 24–5–0.5–1 et seq. A brief summary of the posture of the case provides helpful context for discussion of the motions.

The Mitchells' complaint against Collagen was filed in state court on January 21, 1993. Collagen then removed the case to this court, and, on December 30, 1993, moved for summary judgment. Collagen asserts that all state law tort theories raised by the Mitchells' complaint are preempted by federal law.

On January 25, 1994, before responding to the summary judgment motion, the Mitchells moved for leave to amend their complaint to add the Deceptive Consumer Sales Act claim. The Mitchells contend that this claim is not preempted, even if all of their other claims are. Collagen immediately objected that the amendment would be futile, the amended complaint on its face showing the Deceptive Consumer Sales Act claim to be barred by the statute of limitations.

On February 17, 1994, the Mitchells filed their second motion to amend, an "amended" motion for leave to file an amended complaint. The purpose of the amended motion was to modify paragraph four of the proposed amended complaint to add the bracketed and italicized portion of the following quotation: "Plaintiffs were not reasonably able to discover or learn that there was a relationship between Defendant COLLAGEN CORPORATION'S products and her injuries until late 1991 [, and [sic] due to the fraud and concealment of her causes of action by Collagen Corporation ]." The Mitchells explained that the purpose of this amendment was to make the amended complaint read as "more clearly setting out such fraud and/or fraudulent concealment on the part of Collagen Corporation, which tolls the statute of limitations under the [Deceptive Consumer Sales] Act." [1]

■ Under Rule 15(a) of the FEDERAL RULES OF CIVIL PROCEDURE, the court must

---

1. The quoted language is from "Plaintiff's Reply to Defendant's Objection to Motion for Leave to File Amended Pleading," filed on February 17, 1994. This document was stricken on Collagen's motion because untimely under this District's Local Rules.

freely allow a complaint to be amended "when justice so requires." FED.R.CIV.P. 15(a); *DeSalle v. Wright,* 969 F.2d 273, 277–78 (7th Cir.1992). It would be oxymoronic to suggest that justice "requires" that an amendment be allowed when the amendment would be futile. Thus, despite the liberality required by Rule 15(a), it is not an abuse of discretion to deny leave to make a futile amendment. *Id.* When the proposed amendment could not withstand a motion to dismiss, denying leave saves the defendant and the court needless work. *Perkins v. Silverstein,* 939 F.2d 463, 472 (7th Cir.1991).

■ The Indiana Deceptive Consumer Sales Act contains a two-year **occurrence** statute of limitations: "Any action brought under this chapter may not be brought more than two years after the occurrence of the deceptive act...." Ind.Code § 24–5–0.5–5(b). Because the statute unambiguously commences the limitations period on an "occurrence" rather than "accrual" of the cause of action, the period runs from that occurrence regardless whether the resultant damage can be ascertained. *See Havens v. Ritchey,* 582 N.E.2d 792, 794 (Ind.1991) (construing similar statute of limitations in Indiana Medical Malpractice Act); *Weinberg v. Bess,* 638 N.E.2d 841, 844 (Ind.Ct.App. 1994) (for medical malpractice, "two-year period begins to run at the occurrence of the negligence rather than at the time the negligence is discovered").

Thus, the statute of limitations began to run in the present case, at the latest, on September 22, 1988, when Barbara Mitchell received her last injection—her last "purchase" of Collagen's product—not in late 1991 at the time she alleges she discovered that her injuries were related to the product. The two-year statute thus expired September 22, 1990, making her complaint filed January 21, 1993, appear untimely. It is this untimeliness that makes the Mitchells' attempt to add an allegation of fraudulent concealment important.

The statute of limitations in the Deceptive Consumer Sales Act is subject to the equitable doctrine of fraudulent concealment, which estops a defendant who has actively deceived a plaintiff from asserting the defense.[2] *Cwiakala v. Economy Autos, Ltd.,* 587 F.Supp. 1462, 1466 (N.D.Ind.1984). Thus, taking the allegations of the Mitchells' proposed amended complaint as true, Collagen's fraudulent concealment tolled the running of the two-year statute until late 1991 when the Mitchells learned of Collagen's (alleged) responsibility for her injuries.

The tolling of the limitations period until that time, however, did not allow the Mitchells a fresh two-year period in which to file their complaint. Instead, because "[e]quity supplies what equity requires," their cause of action had to be commenced within a reasonable time. *Cacdac v. Hiland,* 561 N.E.2d 758, 759 (Ind.1990) (medical malpractice); *O'Neal v. Throop,* 596 N.E.2d 984, 988 (Ind. Ct.App.1992) ("two-year statute of limitations does not apply under the doctrine of fraudulent concealment ... Instead, a plaintiff claiming fraudulent concealment has a duty to bring the action within a reasonable time after discovering the malpractice.")

Because malpractice actions are (or at least are perceived to be) relatively common and an injury from malpractice often becomes apparent only later, the determination whether a plaintiff relying on fraudulent concealment to toll the limitations period has commenced his/her action in a reasonable time comes up there often. The following periods of delay have been held unreasonable as a matter of law: twenty-two months, *Cacdac,* 561 N.E.2d at 759 ("delay of twenty-two months ... was not reasonable ... trial court should have granted Dr. Cacdac summary judgment"); thirteen months, *Babcock v. Lafayette Home Hospital,* 587 N.E.2d 1320, 1324–25 (Ind.Ct.App.1992); twenty-one months, *Yarnell v. Hurley,* 572 N.E.2d 1312, 1315 (Ind.Ct.App.1991); twenty-two months, *Cyrus v. Nero,* 546 N.E.2d 328, 331 (Ind.Ct. App.1989); seventeen months, *Basinger v. Sullivan,* 540 N.E.2d 91, 95 (Ind.Ct.App. 1989); twenty-two months, *Spoljaric v. Pangan,* 466 N.E.2d 37, 45 (Ind.Ct.App.1984).

---

**2.** When a fiduciary or confidential relationship exists, passive failure to disclose will suffice.

*Hughes v. Glaese,* 637 N.E.2d 822, 825 (Ind.Ct. App.1994).

■ In the present case the Mitchells have pleaded that they became aware of the linkage between Collagen's product and Barbara Mitchell's injuries late in 1991. Even though they filed a complaint approximately thirteen months later in January, 1993, they waited twelve more months, until January, 1994, before trying to bring their Deceptive Consumer Sales Act claim, *i.e.*, at least twenty-five months after discovering the connection to Collagen. This twenty-five month delay was unreasonable. Even if it could be argued that the January, 1994, proposed amendment should "relate back"—an argument that the court finds unappealing—to the January, 1993, filing, making the delay only thirteen months, that delay still would be unreasonable. Thus, because it is clear that the Mitchells' Deceptive Consumer Sales Act claim is barred by the statute of limitations, their attempt to add that claim to their complaint is futile, and both of their motions for leave to amend their complaint are **DENIED**.[3]

### *Collagen's Motion for Summary Judgment*

■ Collagen contends that all of the state law causes of action the Mitchells assert are preempted by federal law, thereby entitling Collagen to a judgment of dismissal with prejudice. Alternatively, Collagen contends that as to any claims which are not preempted, the Mitchells have rested on their complaint and have no evidence in support of such claims, entitling Collagen to summary judgment.

Zyderm and Zyplast are classified by the Food and Drug Administration ("FDA") as "Class III medical devices" extensively regulated under the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301–395, more specifically, pursuant to the Medical Device Amendments of 1976 ("MDA") thereto, 21 U.S.C. §§ 360c-360*l*. As explained in both *Stamps v. Colla-*

*gen Corp.*, 984 F.2d 1416 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993), and *King v. Collagen Corp.*, 983 F.2d 1130 (1st Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993), the MDA requires that medical devices undergo a rigorous premarket approval ("PMA") process to ensure their safety and efficacy before they can be dispensed to the public.

The MDA prohibits states from subjecting a medical device to "any requirement (1) which is different from, or in addition to, any requirement applicable under the [Food, Drug and Cosmetic Act] to the device, and (2) which relates to the safety and effectiveness of the device or to any other matter included in a requirement applicable to the device under" the Act. 21 U.S.C. § 360k(a). In *Stamps* and *King* the Fifth and First Circuits have agreed with Collagen's stance that this provision preempts state tort claims like those the Mitchells have pleaded. The Mitchells respond that both decisions are "patently incorrect" and should not be followed by this court.

There is both a short and long answer to the preemption question debated by the parties. The short answer is that the court agrees with the result reached in *Stamps* and *King*. In § 360k(a) Congress expressly defined the preemptive reach of the MDA, and when Congress includes a specific preemption provision, courts need only identify the domain created by the statutory language. *Cipollone v. Liggett Group, Inc.*, —— U.S. ——, ——, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992)[4]; *American Agriculture Movement v. Board of Trade*, 977 F.2d 1147, 1154 (7th Cir.1992). *Stamps* and *King* correctly conclude that Congress, by using the phrase "any requirement," meant for the preemption provision to "sweep broadly" precluding not only positive enactments but also common-

---

**3.** The Mitchells have not argued that Ind.Code § 34–1–2–9 (statutory extension of statute of limitations for fraudulent concealment) applies to commence a new two-year period beginning in late 1991, so the court need not decide that issue. In *Guy v. Schuldt*, 236 Ind. 101, 138 N.E.2d 891, 893 (1956), the Indiana Supreme Court ruled that § 34–1–2–9 did not provide an exception to the later-enacted special statute of limitations for

medical malpractice actions. Giving that decision a hasty look, the Court's reasoning seems equally applicable here.

**4.** Justices Blackmun, Kennedy and Souter concurring in Section IV of the plurality opinion in *Cipollone* result in a majority for this proposition. *Vango Media Inc. v. New York City*, 34 F.3d 68, 72 (2d Cir.1994).

law tort actions.[5] *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 370 (7th Cir.1993) (*Cipollone* "held that sweeping congressional efforts to pre-empt state regulation also bar state damages claims"); *Stamps,* 984 F.2d at 1421; *King,* 983 F.2d at 1134–35. The Court of Appeals explains:·

> If the FDA in a valid regulation under the Medical Device Amendments requires X, and X relates to safety or effectiveness, a state cannot, whether through statute, regulation, or common law decision, require non-X or X ± Y.

*Slater v. Optical Radiation Corp.,* 961 F.2d 1330, 1333 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992).

The PMA process—the validity of which the Mitchells do not question—is without doubt an FDA regulation of this nature: a medical device categorized as a Class III device is subject "to premarket approval to provide reasonable assurance of its safety and effectiveness." 21 U.S.C. § 360c(a)(1)(C). As the Mitchells admit in opposing summary judgment, this requirement is not substantially different from "state tort products liability and similar actions requiring reasonable product safety and effectiveness." Plaintiffs' Brief, p. 10.[6] These state tort actions are therefore requirements in addition to the PMA process, and preempted. *Stamps,* 984 F.2d at 1423–24. "The plaintiff wishes in the name of state tort law to impose additional require-

ments … and this engrafting of additional requirements relating to safety or effectiveness is forbidden by the preemption provision in the Medical Device Amendments." *Slater,* 961 F.2d at 1333. Effectively, the MDA causes blanket preemption.[7]

This short answer is less than completely satisfactory. It does not explain why the court rejects the Mitchells' arguments that *Stamps* and *King* were wrongly decided. It also does not explain why the court, unlike *Stamps*[8] and *King,* has not followed the approach recommended by the *Cipollone* plurality, inquiring tort-by-tort whether the tort's underlying duty relates to safety and effectiveness. —— U.S. at ——, 112 S.Ct. at 2621. The court therefore will address each of the Mitchells' arguments, and in so doing, attempt to explain where it parts company with *Stamps* and *King.* The arguments are addressed in the order made in the Plaintiffs' Brief.[9]

### 1. Initial Preemption Determination

■ First, the Mitchells argue that the MDA does not preempt state law unless the FDA first determines that the particular state law requirement in question is preempted. Because the MDA preempts only state law requirements which are "different from, or in addition to" federal requirements,[10] 21 U.S.C. § 360k(a), the Mitchells believe the following (as misquoted by

---

**5.** The FDA is of the same view, declaring that preemption applies equally to "statute, ordinance, regulation, or court decision." 21 C.F.R. § 808.1(b).

**6.** All references to "Plaintiffs' Brief" are to "Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment and Memorandum of Authorities," filed January 28, 1994.

**7.** *Ministry of Health v. Shiley, Inc.,* 858 F.Supp. 1426, 1437 (C.D.Cal.1994) concludes that "the First and Fifth Circuits, and numerous district courts, with one exception, have followed a rule of blanket preemption [under the MDA] for Class III devices." The court lists the cases it surveyed to reach this conclusion. 858 F.Supp. at 1437 n. 17. *Shiley,* reaching a different result, appears to become the second exception. As discussed *infra* at 896 n. 18, the court respectfully disagrees with *Shiley.*

**8.** *Stamps* does not categorically analyze each cause, but only because it relies on a prior decision, *Moore v. Kimberly–Clark Corp.,* 867 F.2d 243 (5th Cir.1989), which did. *Stamps,* 984 F.2d at 1422.

**9.** Because the court has denied the Mitchells' request to amend their complaint to add a cause of action under the Indiana Deceptive Consumer Sales Act, the court does not address their arguments that this cause would not be preempted.

**10.** This is a fine example of drafting overkill making a statute less than clear. If only different or additional requirements are preempted, then only identical requirements are not preempted (because lesser requirements would be preempted as different). Does it matter one whit that identical requirements are not preempted? It would seem that where state and federal requirements are identical, compliance with either would satisfy both, making the preemption issue irrelevant.

them) portion of 21 C.F.R. § 808.1(e) sets out a prerequisite to preemption: "It is the responsibility of the Food and Drug Administration, subject to review by Federal courts, to determine whether a State or local requirement is equal to, or substantially identical to, such requirements ..." The Mitchells believe that until the FDA makes this determination after being requested by an "interested person" to issue an advisory opinion as to preemption pursuant to 21 C.F.R. § 808.5(a), the MDA has no preemptive effect and a court ruling otherwise would "usurp the FDA's authority." Plaintiffs' Brief, p. 4.

This argument is untenable, and can be made only by divorcing the misquoted regulation from its context. The MDA allows states and their governmental units to apply to the FDA for exemption of state law from preemption. 21 U.S.C. § 360k(b). Accordingly, the FDA has promulgated regulations "for the submission, review, and approval of applications for exemption from Federal preemption...." 21 C.F.R. § 808.1(a). It is only in the context of these regulations that the FDA has a responsibility to determine whether state requirements differ from federal requirements: this determination, rather than being a prerequisite to preemption, is necessary only because the statute itself preempts different or additional state requirements.

This is clear not only from viewing part 808 as a whole but merely from reading the complete text of § 808.1(e), as opposed to the sentence fragment (mis)quoted by the Mitchells:

It is the responsibility of the Food and Drug Administration, subject to review by Federal Courts, to determine whether a State or local requirement is equal to, or substantially identical to, requirements imposed by or under the act, or is different from, or in addition to, such requirements, in accordance with the procedures provided by this part. **However, it is the responsibility of States and political subdivisions to determine initially whether to seek exemptions from preemption. Any state or political subdivision whose re-**

**quirements relating to devices are preempted by section [360k(a) ]** may petition the Commissioner of Food and Drugs for exemption from preemption, in accordance with the procedures provided by this part.

(Emphasis added). It is plain that § 360k(a) of the MDA causes immediate preemption whenever state and federal requirements are inconsistent, otherwise, there would be no initial burden on the states to decide whether to seek an exemption.

Thus, the procedure for obtaining an advisory opinion, rather than being the catalyst for preemption, allows an "interested person" to determine whether a state requirement can safely be ignored, and a state to determine whether its requirements are enforceable or there is a need to seek an exemption from preemption. This interpretation makes sense of the following aspect of the procedure for obtaining an advisory opinion: "The [FDA] ... after consultation with the State or political subdivision, may treat a request by a State or political subdivision for an advisory opinion as an application for exemption from preemption under § 808.20." This provision presupposes that the MDA causes preemption to occur before an advisory opinion is obtained. Were it otherwise, as the Mitchells argue, a state could not benefit by requesting an advisory opinion, but instead only suffer the undesired consequence—preemption of a state regulation.

### 2. FDA Opinions that General State Tort Law not Preempted

■ The Mitchells' second argument is that the FDA has already determined that the MDA preempts only state tort law requirements directed specifically at medical devices, not tort law of general applicability. The Mitchells have attached what appear[11] to be copies of two FDA advisory opinions, dated March 8, 1984, and February 2, 1988, which take that position. The 1988 letter states in part that "it is the Food and Drug Administration's (FDA) position that section 521 of the Federal Food, Drug and Cosmetic Act (21 U.S.C. 360(k)) preempts only state

---

11. Collagen has not objected to the documents' authenticity.

and local requirements that are specifically related to medical devices." Citing *Hillsborough County v. Automated Medical Laboratories*, 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985), the Mitchells argue that the FDA's position is dispositive.

This is simply not true, and the Mitchells ignore that part of their cited authority that contradicts their position. In *Hillsborough County* the Supreme Court did not, as the Mitchells' citation suggests, hold that an agency determination is dispositive. Instead, the Court stated "[t]he FDA's statement is dispositive ... unless ... the agency's position is inconsistent with clearly expressed congressional intent ..." *Hillsborough County*, 471 U.S. at 714, 105 S.Ct. at 2376.

The FDA's interpretation that the MDA preempts only state requirements directed specifically at medical devices is contrary to the intent expressed in the statute, considering the Supreme Court's interpretation of similar language in other statutes preempting state law. The MDA preempts any state law which "relates to" safety and effectiveness. 21 U.S.C. § 360k(a). The Supreme Court has held that when Congress chooses "relating to" phraseology in a preemption provision, it intends the provision to sweep expansively. *Morales v. Trans World Airlines*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

In an analogous context the Court in *Morales* rejected the cramped definition of "relating to" that the FDA has adopted in respect to the MDA:

> [P]etitioner advances the notion that only State laws specifically addressed to the airline industry are preempted, whereas the [Airline Deregulation Act] imposes no constraints on laws of general applicability. Besides creating an utterly irrational loophole ..., this notion similarly ignores the sweep of the 'relating to' language. We have consistently rejected this precise argument in our ERISA cases: '[A] state law may "relate to" a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect.'

*Morales*, 504 U.S. at ——, 112 S.Ct. at 2038 (citations omitted).

The "precise argument" rejected by the Supreme Court—that a law of general applicability does not "relate to" a specific subject area—is the position the FDA has taken in interpreting the MDA. Because such an interpretation is contrary to the clearly expressed intent of Congress, the court gives it no deference. *Dole v. United Steelworkers of America*, 494 U.S. 26, 42, 110 S.Ct. 929, 938, 108 L.Ed.2d 23 (1990).

### 3. The Indiana Attorney General Opposes MDA Preemption

The Mitchells' third argument is that Pamela Carter, Indiana's Attorney General, has publicly opposed preemption of state tort law by the MDA, when Indiana joined in an *amici curiae* brief seeking *certiorari* in *Stamps* and *King*. The Mitchells ask the court to consider the arguments made in the *amici curiae* brief.

■ Preemption doctrine results from the dual between sovereigns inherent in a federal system. Whether a statute Congress enacts preempts state law depends on Congress' intent as expressed in the statute, not on whether a state agrees that its laws are, or should be, preempted. For this reason, and because the court does not sanction the practice of adopting by reference briefs from other cases, this argument does not merit further discussion.

### 4. Proposed Legislation Shows the MDA did not Preempt State Law

■ The Mitchells' fourth argument is that Congress does not view the MDA as having preempted state tort law. Proposed legislation introduced October 13, 1993, "The Comprehensive Family Health Access and Savings Act," contained a provision prohibiting an award of punitive damages against the manufacturer of a medical device. As this provision would be unnecessary if the MDA preempts state tort law, the Mitchells' argument is not implausible. As proposed legislation, however, this at best demonstrates the understanding of the act's sponsors, not Congress. Even given broader due, as the plurality noted in *Cipollone* "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one."

*United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960); *Cipollone,* ___ U.S. at ___, 112 S.Ct. at 2619.

Most important, in *Cipollone* the Court held that an express preemption provision in a statute confines judicial determination of the statute's preemptive reach to construction of that provision. ___ U.S. at ___, 112 S.Ct. at 2618; *see also N.A.A.C.P. v. American Family Mutual Insurance Co.,* 978 F.2d 287, 294 (7th Cir.1992) ("We must determine what Congress meant *by what it enacted,* not what Senators and Representatives said, thought, wished or hoped."). As a result, it would be improper for this court to interpret § 360k(a) of the MDA by divining legislative intent from the provisions of unenacted legislation considered by a subsequent Congress.

### 5. The MDA Does Not Preempt General State Tort Law

▮ Fifth, the Mitchells contend that state tort laws of general applicability (i.e., not applicable only to medical devices) are not preempted. They first point to 21 C.F.R. § 808.1(d)(1) which states exactly this proposition: "Section 521(a) does not preempt State or local requirements of general applicability where the purpose of the requirement relates either to other products in addition to devices (e.g., requirements such as general electrical codes and the Uniform Commercial Code (warranty of fitness)) ...".

This is a retread of their second argument, which relied on FDA advisory opinions to make the point, but with different evidence of how the FDA interprets the statute. Thus, the court need only reiterate that this interpretation is contrary to Congress' intent, as expressed in the § 360k(a) of the MDA, and so the FDA regulation is entitled to no deference.[12] *Dole,* 494 U.S. at 42, 110 S.Ct. at 938.

Continuing with additional support for the proposition that general tort laws are not preempted, the Mitchells argue that preemption occurs only after the FDA establishes "specific counterpart regulations ... making any existent divergent state or local requirements applicable to the device different from, or in addition to, the specific Food and Drug Administration requirements." 21 C.F.R. § 808.1(d). The Mitchells insist that there are no FDA regulations applicable to Zyderm and Zyplast which are "specific counterpart regulations" to state tort law. In other words, the federal PMA process would preempt only a similar state PMA process. The Mitchells rely on *Larsen v. Pacesetter Systems, Inc.,* 74 Haw. 1, 837 P.2d 1273 (1992), which held that the PMA process is a mere procedural requirement, not a regulation of safety and effectiveness, and thus does not trigger preemption.

That view does not find support in this circuit, however. Considering the preemptive effect of procedural, as opposed to substantive, MDA requirements for experimental devices, the Court of Appeals observed that such regulations "specify the procedures for determining whether the experimental design is safe and effective. These are requirements relating to safety and effectiveness and they can therefore have preemptive effect." *Slater,* 961 F.2d at 1333. Similarly, the PMA process, while procedural, is designed to require manufacturers of medical devices to determine and demonstrate that the devices are safe and effective before obtaining approval to market. The court therefore agrees with *Stamps* that once the FDA imposes any requirement upon a device—PMA being a requirement—state tort causes of action relating to safety and effectiveness

---

**12.** The FDA's conclusion that requirements of general applicability are not preempted appears to derive from its view that such requirements "are not preempted by section 521(a) [§ 360k(a)] because they are not 'requirements applicable to a device' within the meaning of section 521(a) of the act ..." 21 C.F.R. § 808.1(d). Oddly, § 360k(a) does not contain the phrase the FDA places in quotation marks.

Instead, the word "applicable" appears only in the following context: "... no State ... may establish or continue in effect with respect to a device ... any requirement—(1) which is different from, or in addition to, **any requirement applicable under this chapter** to the device ..." 21 U.S.C. § 360k(a) (emphasis added.) The phrase "with respect to a device" appears to limit preemption only by meaning that state requirements are not voided: they continue in effect insofar as they apply to anything other than medical devices.

are preempted.[13] *Stamps,* 984 F.2d at 1423–24.

The Mitchells' final effort to support their "no preemption of general law" argument is based on the FDA's construction of the phrase "different from, or in addition to" used in § 360k(a) of the MDA. The FDA sensibly interprets this phrase as meaning that state requirements that are "substantially identical to" federal requirements are not preempted. 21 C.F.R. § 808.1(d)(2). In an attempt to attach meaning to this irrelevancy, see n. 10 at p. 890, *supra,* the FDA defines "substantially identical to" to include any state requirement that "does not significantly differ in effect from a Federal requirement." 21 C.F.R. § 808.3. It is not difficult to conclude then, as the Mitchells do, that state tort laws are not preempted because they do not differ "in effect" from the PMA—both having the effect of requiring medical devices to be safe and effective.

The Mitchells' analysis is sound: the FDA's definition of "substantially identical to" is not. The plain language of the MDA preempts additional or different state requirements relating to safety and effectiveness, whether or not they have the same "effect" as the federal requirements. For example, 21 C.F.R. § 801.430(f) specifies the absorbency test to be used for menstrual tampons. A state law requiring a different test but with the same effect—determining absorbency—would nevertheless be preempted.[14]

And so it is with state tort laws. While they may have the same effect as the PMA process, safety and effectiveness, they achieve that effect only by imposing different or additional requirements on devices: *e.g.,*

different or additional premarket testing should have been done, the device literature should have contained additional or different warnings. "[T]his engrafting of additional requirements relating to safety or effectiveness is forbidden by the preemption provision in the Medical Device Amendments." *Slater,* 961 F.2d at 1333.

### 6. Plaintiffs' Claims not Preempted Under Cipollone Analysis[15]

The Mitchells argue that applying the preemption analysis used by the Supreme Court in *Cipollone,* the MDA does not preempt their breach of warranty, fraud and misrepresentation claims. *Stamps* and *King,* both coming to a contrary conclusion, are accordingly erroneous and should not be followed. In order to address this argument the court first explains its understanding of the badly fractured decision in *Cipollone,* and the adherence of *Stamps* and *King* thereto.

In *Cipollone* the Court addressed the issue of the scope of preemption under the Public Health Cigarette Smoking Act of 1969, which preempts any "requirement or prohibition based on smoking and health ... imposed under State law ...". 15 U.S.C. § 1334(b). While six of the nine Justices agreed that a "requirement or prohibition" includes state common law tort causes, no majority agreed on how to determine whether a tort requirement is "based on smoking and health."[16]

A plurality of four Justices decided that the answer depends on whether the "legal duty that is the predicate of the common law damages action" is "based on" smoking and health. —— U.S. at ——, 112 S.Ct. at 2621. Thus, the plurality concluded that a fraud

**13.** *Stamps* also points out that *Larsen* is distinguishable because it involved a "substantially equivalent" device which underwent a less rigorous PMA than a new device. *Stamps,* 984 F.2d at 1423 n. 6.

**14.** Making this point further, a manufacturer can use a different absorbency test only by demonstrating equivalency and obtaining FDA approval. 21 C.F.R. § 801.430(f)(3).

**15.** In the first portion of this argument plaintiffs reiterate for the third time that 21 C.F.R. § 808.1(d)(1) excludes tort laws of general applicability from preemption. In addressing plain-

tiffs' second and fifth arguments the court has explained why it rejects that FDA interpretation of the MDA's preemptive scope.

**16.** Prior to amendment in 1969, instead of "based on" the statute used the phrase "relating to smoking and health"—very similar to the MDA's "relates to the safety and effectiveness." In commenting on the effect of Congress having amended the wording, the plurality observed that "the phrase 'relating to smoking and health' ... was essentially unchanged by the 1969 Act ...". *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2624.

claim based on advertisements containing false statements of fact would not be preempted because "not predicated on a duty 'based on smoking and health' but rather on a more general obligation—the duty not to deceive." *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2624. On the other hand, failure-to-warn claims (related to advertising and promotion) were held preempted, and thus implicitly found to be based on smoking and health. *Id.* at —— – ——, 112 S.Ct. at 2621-22.

Justice Blackmun, joined by Justices Kennedy and Souter, of the view that the statute did not preempt state common-law damages actions at all, dissented from the plurality's "little short of baffling" conclusion that some common-law tort causes of action were preempted, and thus from the court's judgment to that extent.[17] *Id.* at ——, ——, 112 S.Ct. at 2627, 2631. Moreover, in dissenting the Justices took the plurality to task for focusing its analysis on the legal duty serving as the predicate of the tort. Justice Blackmun found the analysis's "most obvious problem ... its frequent shift in the level of generality at which it examines individual claims." *Id.* at ——, 112 S.Ct. at 2631.

As an example of this shift, Justice Blackmun pointed to the plurality's conclusion that failure to warn claims were preempted, but fraudulent misrepresentation claims were not, because based on a general duty not to deceive. Justice Blackmun objected that the failure-to-warn claims "could just as easily be described as based on a 'more general obligation' to inform consumers of known risks" and thus found not preempted. Justice Blackmun viewed the plurality's approach as creating "a crazy quilt of pre-emption," concluding:

> In short, I can perceive no principled basis for many of the Court's asserted distinctions among the common-law claims, and I cannot believe that Congress intended to create such a hodge-podge of allowed and disallowed claims ... I can only speculate

as to the difficulty lower courts will encounter in attempting to implement the Court's decision.

*Id.* at ——, 112 S.Ct. at 2631.

Justice Scalia, joined by Justice Thomas, agreed with Justice Blackmun's critique of the plurality's approach, describing it as "suspect, to begin with, because the plurality is unwilling to apply it consistently." *Id.* at ——, 112 S.Ct. at 2636. Justice Scalia proposed an alternative: "Once one is forced to select a *consistent* methodology for evaluating whether a given legal duty is 'based on smoking and health', it becomes obvious that the methodology must focus not upon the ultimate source of the duty (*e.g.,* the common law) but upon its proximate application." *Id.* To apply this test, Justice Scalia "would ask ... whether, whatever the source of the duty, it imposes an obligation in this case because of the effect of smoking upon health," and would have concluded in the case before the Court that all of the tort claims raised were preempted. *Id.* at ——, 112 S.Ct. at 2637.

■ This effort to explain the Justices' diverging opinions is of more than pedantic interest: when no opinion commands the support of a majority of the Justices, the task of this court is to determine the Court's holding by finding the narrowest ground upon which those concurring with the plurality agree, i.e., the "lowest common denominator" holding. *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977); *Cygnar v. City of Chicago,* 865 F.2d 827, 838 (7th Cir.1989); *Janowiak v. City of South Bend,* 836 F.2d 1034, 1041 (7th Cir.1987); *Britton v. South Bend Community School Corp.,* 819 F.2d 766, 768 (7th Cir. 1987); *Schindler v. Clerk of Circuit Court,* 715 F.2d 341, 345 n. 5 (7th Cir.1983).

While Justices Scalia and Thomas' votes created a majority for the court's judgment that state law tort claims "based on smoking and health" were preempted, there is no

**17.** The Justices concurred with the plurality's opinion to form a majority for the following propositions: 1) the preemptive scope of a statute must be determined entirely from the express language used in its preemption provisions, *id.* at ——, 112 S.Ct. at 2625; 2) state common-law damages claims are not preempted unless the statutory language chosen by Congress indicates a clear and manifest purpose to do so, *id.* at ——, 112 S.Ct. at 2626, and; 3) the 1965 Federal Cigarette Labeling and Advertising Act docs not preempt state common-law damages claims. *Id.*

narrow ground of agreement on the method for making that determination. To the contrary, as just explained above, a majority of five Justices agreed that the plurality's "ultimate source" analysis was flawed and unworkable. Thus, there is no lowest common denominator holding instructing lower courts how to determine when a tort requirement is "based on" or "relates to" something else—in this case, safety and effectiveness—and is preempted. *Cf. Schindler*, 715 F.2d at 345, n. 5.

Returning to the Mitchells' argument, they believe that if *Stamps* and *King* had faithfully followed *Cipollone*, the decisions would have found breach of warranty, fraud and misrepresentation claims not preempted by the MDA. The unacknowledged premise of this argument is that the *Cipollone* plurality's "ultimate source" analysis is a holding which must be followed.[18] That premise, which finds some support in *Stamps*, 984 F.2d at 1422, and, to a lesser degree, *King*, is both unfounded and suspect. As explained above, unfounded because the analysis is not a "least common denominator" agreed to by a majority of the Justices; suspect because, as *Stamps* and *King* both recognize, *Cipollone* does suggest that fraud and breach of warranty claims are not preempted.

*Stamps* and *King* both somewhat uncomfortably reach the opposite result, however. For example, in finding the fraud claims at issue preempted by the MDA, *Stamps* read the complaint as having pleaded fraud inadequately, instead sounding in negligence. *Stamps*, 984 F.2d at 1422 n. 5. *King* read the complaint's fraud claim as having been *originally* based on a statute requiring privity, despite plaintiff's insistence the claim (like that in *Cipollone* ) was based on a general duty not to deceive. *King*, 983 F.2d at 1136.

██ Neither distinction is compelling, particularly in this circuit where a "complaint need not identify a legal theory, and specifying an incorrect theory is not fatal." *Bartho-*

*let v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992). The court believes that *Stamps* and *King* both reached a correct result, however, and one that can easily be supported simply by applying the "proximate application" methodology proposed by Justice Scalia. —— U.S. at ——–——, 112 S.Ct. at 2636–37. Because the court does not read *Cipollone* as providing a holding that requires otherwise, and because the court believes it the better and more consistent of the two approaches, the court will apply the "proximate application" methodology to the Mitchells' tort causes of action.

To apply Justice Scalia's proximate application methodology in the present circumstances, the court simply inquires whether the tort imposes an obligation that relates to the safety and effectiveness of Zyderm and Zyplast, no matter where the source of the tort's duty lies. Considering this as the relevant inquiry with respect to each of the Mitchells' tort claims—at least those for which there is evidentiary support creating a factual dispute sufficient to withstand summary judgment—the court finds all preempted.

As to fraud and misrepresentation, the Mitchells' claim takes two avenues. First, that Collagen obtained the FDA's approval to market Zyderm and Zyplast through fraud and misrepresentation in the PMA process. Second, that Collagen continues to market the devices through fraud and misrepresentation.

██ As to fraud in the PMA process, the Mitchells' claims, even if not preempted, fail for lack of proof. The Mitchells have not disputed Collagen's evidence that the FDA has comprehensively reexamined its original decision to approve Collagen's PMA application and reaffirmed that decision. The Mitchells have merely rested on their pleadings, failing to come forward with any proof

---

18. This is the approach taken in what appears to be the most recent case addressing the scope of preemption under the MDA, *Ministry of Health v. Shiley*, 858 F.Supp. 1426 (C.D.Cal.1994). *Shiley* concludes that *Cipollone* requires that "state claims against Class III device manufacturers survive if the legal duty underlying the state claim either has a basis independent of the MDA's focus on the medical device's safety and effectiveness, or arises from the manufacturer and not from the state." 858 F.Supp. at 1440. For the reasons explained in this order, the court respectfully disagrees with *Shiley*.

of the fraud they allege. When opposing a motion for summary judgment, a party who has the burden of proof may not rest on the allegations of their pleadings.[19] *Chambers v. American Trans Air, Inc.,* 17 F.3d 998, 1002 (7th Cir.1994).

Moreover, the evidentiary problem aside, this fraud claim would require the Mitchells to prove that more, or different, information should have been provided to the FDA as part of Collagen's PMA application, causing the FDA to reach a different decision. Thus the tort would impose additional obligations relating to safety and effectiveness and is preempted. *King,* 983 F.2d at 1136, 1140.

Similarly, with respect to the Mitchells' claims that Zyderm and Zyplast are marketed through fraud and misrepresentation, "[i]f the MDA does nothing else, it regulates the ... sale and marketing of Class III medical devices in an extensive way. The MDA does this through the packaging and labeling requirements which directly affect the marketing and sale of the product." *King,* 983 F.2d at 1136. Thus, the Mitchells' claims with respect to fraud in advertising would impose additional requirements and are preempted.

As to breach of warranty claims, the court agrees with *King* that the MDA is not like the statute addressed in *Cipollone,* which did not restrict the ability of cigarette manufacturers to make warranties in their advertising and promotion. Instead, all aspects of product labeling and literature are regulated by the FDA under the MDA, preventing Collagen from making any warranties that are not FDA approved. *King,* 983 F.2d at 1135. Thus, a breach of warranty cause of action would impose different or additional requirements with respect to safety and efficiency, and is preempted.

As to their failure to warn and insufficient warning claims, the Mitchells contend (and Collagen admits) that under the MDA a device manufacturer can add additional safety warnings to product labels without prior FDA approval. 21 C.F.R. § 814.39. Thus, the Mitchells argue that state tort law that would require those changes is consistent with the MDA and not preempted. This argument fails to observe the distinction between allowing an act and requiring that act. The MDA allows, but does not require, the manufacturer to change its label.[20] Requiring the manufacturer to do so via a failure to warn claim would impose an additional requirement with respect to safety, and such a tort is therefore preempted by the MDA. *Stamps,* 984 F.2d at 1424.

Finally, the Mitchells assert that their claims of product mislabeling, misbranding and adulteration are not preempted. In the court's view the Mitchells admit that these claims are the same as their claims of fraud and misrepresentation in product labeling (i.e., the products are misbranded or mislabeled because they were not safe and effective when used in accordance with their labeling), Plaintiffs' Brief, p. 13, and, as explained above, such claims are preempted. *King,* 983 F.2d at 1136.

To the extent that the Mitchells' claim is that the products were adulterated, *i.e.,* were not the products approved by the FDA as described in Collagen's PMA application, the Mitchells, as with their claims of fraud in the application for premarket approval, have simply rested on their pleadings. Thus, these claims, even if not preempted, fail because the Mitchells have pointed to no evidence of adulteration upon which they could go to a jury.

Because plaintiff Barbara Mitchell's claims are decided against her on the merits,

---

19. After the briefing had closed on Collagen's motion for summary judgment, the Mitchells, for the first time, moved for a continuance in order to conduct discovery to support their response. This effort, made nearly two months after responding to Collagen's motion (after being allowed an extension of time to make that response), comes too late. The Mitchells chose to respond to the motion instead of utilizing Rule 56(f) to first obtain the discovery (allegedly) needed. As a result, the motion is ruled on as briefed. *Chambers,* 17 F.3d at 1002.

20. The Mitchells cite 21 C.F.R. § 201.57(e) as authority requiring Collagen to add a warning to product labeling as soon as evidence of an association with a serious hazard exists. The cited regulation applies to drugs, not products, although the Mitchells' attorneys represent otherwise in quoting it by deleting a reference to drug and replacing it with "[product]." Plaintiffs' Brief contains a disturbing number of similar examples of misleading quotations.

the derivative claim of her spouse, plaintiff Gregory Mitchell, for loss of consortium, is not viable. *Board of Commissioners of Cass County v. Nevitt,* 448 N.E.2d 333, 341 (Ind. Ct.App.1983). Collagen is therefore entitled to summary judgment thereon.

## CONCLUSION

As explained in this overly-lengthy order and memorandum opinion, the court **DE-NIES** the Mitchells' motions to amend their complaint. The court finds that the state common law tort causes of action pleaded by the Mitchells are either unsupported by any evidence creating an issue of fact upon which the issue could be submitted to a jury, or are preempted by the MDA. As a result, Collagen's motion for summary judgment is **GRANTED.** The clerk shall enter a final judgment in favor of defendant Collagen Corporation, plaintiffs Barbara and Gregory Mitchell to take nothing by their action. Costs of action as allowed by RULE 54(d).

**SO ORDERED.**