**Robert G. OLIVER, Sr. and Linda E. Oliver, his wife, Plaintiffs,**

v.

**JOHNSON & JOHNSON, INC., a Corporation; Johnson & Johnson Orthopaedics, Inc., a Corporation; Johnson & Johnson Orthopaedic, Inc., a Corporation; Johnson & Johnson Products, Inc., a Corporation; and Johnson & Johnson Products, Inc., Orthopaedic Division, a Corporation, Defendants.**

Civ. A. No. 94–0237.

United States District Court, W.D. Pennsylvania.

Oct. 5, 1994.

**252**

Alan L. Pepicelli, Watts & Pepicelli, Meadville, PA and Michael Louik, Berger, Kapetan, Meyers, Rosen, Louik & Raizman, Pittsburgh, PA, for plaintiffs.

Chad A. Cicconi and C. James Zeszutek, Thorp, Reed & Armstrong, Pittsburgh, PA, for defendants.

## MEMORANDUM

LANCASTER, District Judge.

This is an action in products liability. Plaintiff Robert Oliver asserts claims against defendants for strict liability under the Restatement (Second) Torts § 402A, Pennsylvania common law negligence, misrepresentation, and breach of implied and expressed warranties. Plaintiff Linda Oliver has filed a derivative claim for loss of consortium. Plaintiffs claim Mr. Oliver was injured because of an allegedly defectively designed prosthetic knee device manufactured and sold by defendants. Defendants move the court for summary judgment arguing that plaintiffs' claims are preempted by the Medical Device Amendments of 1976 to the Federal Food, Drug, and Cosmetics Act, 21 U.S.C. § 301 et seq. ("MDA"). For the following reasons, the court finds that plaintiffs' state law causes of action are not preempted by the MDA and denies defendants' motion for summary judgment.

## I. BACKGROUND

The facts material to the motion are neither complicated nor in dispute. On July 27, 1987, Mr. Oliver underwent a left total knee arthroplasty at the Greenville Hospital in Mercer County, Pennsylvania. Doctors implanted in Mr. Oliver a prosthetic knee device called a "Press Fit Condylar Total Knee System," that was designed and manufactured by defendant Johnson & Johnson. In August of 1990, Mr. Oliver underwent an arthrotomy of his left knee joint because he was experiencing physical problems allegedly due to the prosthetic knee system. The surgery included the removal of multiple prosthetic parts and a complete synovectomy.

Mr. Oliver claims that the prosthetic knee system was defectively designed and manufactured and that this defect caused it to fail resulting in severe injuries to the bones, joints, muscles, ligaments, tendons, nerves and tissue in his left knee. Mr. Oliver also claims that he is suffering and will continue to suffer from various complications and residual effects as a result of the defective condition of the prosthetic knee device. Hence, this suit.

## II. STANDARD OF REVIEW

The court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" only if it might affect the outcome of the case under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Factual disputes concerning issues that are irrelevant to the outcome of the case are, therefore, not considered. Id. at 248, 106 S.Ct. at 2510. Factual disputes must also be "genuine" in that the evidence presented must be such "that a reasonable jury could return a verdict in favor of the non-moving party." Id.

A non-moving party may not successfully oppose a summary judgment motion by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit. *Lujan v. Nat'l Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990). Rather, the non-moving party must offer specific evidence found in the record that contradicts the evidence presented by the movant and indicates that there remain relevant factual disputes that must be resolved at trial. *Id.* If the non-moving party does not respond in this manner, the court, when appropriate, shall grant summary judgment.

With these concepts in mind, the court turns to the merits of defendants' motion.

## III. *DISCUSSION*

Defendants contend that the prosthetic knee system is a medical device that is regulated for safety and effectiveness by the Food and Drug Administration ("FDA") and that, therefore, plaintiffs' state law causes of action are preempted by the MDA. The court disagrees.

The court is guided by the principle that there exists a presumption against the federal preemption of state laws. *Cipollone v. Liggett Group Inc.,* — U.S. —, —, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992). Indeed, the court's preemption analysis "starts with the basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981). The United States Supreme Court has explained that " 'the historic police powers of the state [are] not to be superseded ... by Federal Act unless that [is] the clear and manifest purpose of Congress.' " *Id.* — U.S. at —, 112 S.Ct. at 2617 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). Additionally, even when Congress has expressly preempted state law and has explicitly defined the preemptive reach of a statute, "matters beyond that reach are not preempted." *Cipollone,* — U.S. at —, 112 S.Ct. at 2618.

Congress included an express preemption provision in the MDA that states, in pertinent part:

> [N]o state or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement ... which is different from, or in addition to, any requirement applicable under this chapter to the device, and ... which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. 360k(a)(1).

The Court of Appeals for the Third Circuit has recently construed this clause to preempt not only any positive state legislative enactments that create safety and effectiveness requirements different from or in addition to those set forth in the MDA, but also any state common law causes of action that result in different or additional requirements. *See Gile v. Optical Radiation Corp.,* 22 F.3d. 540, 542–3 (3d Cir.1994).

Because Congress has expressly provided that the MDA preempts conflicting state laws that relate to the safety or effectiveness of the device and has explicitly defined its preemptive reach, defendants' arguments have a surface appeal. Nevertheless, the FDA, the agency Congress vested with the authority to regulate this subject matter, has clarified that "[s]tate or local requirements are preempted only when the [FDA] has established specific counterpart regulations or [when] there are other specific requirements applicable to a particular device under the act." 21 C.F.R. § 808.1(d). The FDA's interpretation, which the court finds is based on a reasonable construction of the MDA, is controlling. *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).

Therefore, the salient issue is whether the FDA has established specific counterpart regulations or specific requirements for this particular prosthetic knee device. Unless the FDA has established such specific counterpart regulations, plaintiffs' state law claims are not preempted. Because defendants have failed to identify any special con-

trols, performance standards, postmarket surveillance, or guidelines to date, that are applicable to this particular prosthetic knee system, defendants' preemption argument fails.

The FDA subjects all medical devices to certain general safety controls. The general safety controls relate principally to labeling, reporting and recordkeeping requirements. 21 C.F.R. Pts. 801, 803, 804. In addition to promulgating general safety controls, however, the FDA also classifies all medical devices into one of three categories based on their potential for causing harm. 21 U.S.C. § 360c.

Class I devices present little or no threat to public health and are, therefore, subject to only the general safety controls. Class II medical devices pose more of a threat to public health and thus are subject to more stringent controls. Accordingly, a device is categorized as class II "if general controls alone are insufficient to provide reasonable assurance of its safety and effectiveness and there is sufficient information to establish special controls." 21 C.F.R. § 860.3(c)(2). Finally, class III devices are subject to the most extensive controls because they present a potential unreasonable risk of illness or injury. Accordingly, class III devices can not be sold to the general public without first receiving pre-market approval from the FDA.

The prosthetic knee system at issue in this case has been designated as a "class II" device. 21 C.F.R. § 888.3560. Therefore, it is one that "is or eventually will be subject to special controls." 21 C.F.R. § 860.3(c)(2). Special controls that the FDA may promulgate include, but are not limited to, minimum performance standards and postmarket surveillance. 21 C.F.R. § 860.3(c)(2).

The prosthetic knee device at issue has also been designated by the FDA as a "critical device." Advisory List of Critical Devices, 52 Fed.Reg. 8854 (1988). Critical devices are those that are "intended for surgical implant into the body or to support or sustain life and whose failure to perform when properly used in accordance with instructions for use provided in the labeling can be reasonably expected to result in a significant injury to the user." 21 C.F.R. § 820.3(f). "Critical devices are subject to additional regulations governing the control of device components, production controls, processing controls, device labeling, distribution, and recordkeeping." 21 C.F.R. § 820. These regulations apply generally to all critical devices.

As an initial matter, the court rejects plaintiffs' argument that the MDA does not preempt state law tort claims that challenge the safety and effectiveness of class II medical devices because, according to plaintiffs, class II devices are, by definition, insufficiently regulated to trigger preemption. The court disagrees with this general proposition because nothing in the MDA suggests that Congress intended to exclude class II devices from the MDA's preemption provisions. Indeed, the MDA makes no distinctions as to its preemptive effect based on device classification.

Notwithstanding that the MDA makes no distinctions as to its preemptive effect based on device classification, device classification is relevant to the court's analysis. For that reason, defendants' undiscerning reliance on case law involving class III devices is misplaced. As mentioned earlier, each class III device is extensively regulated in that each class III device is subject to pre-marketing evaluation and approval. It is not surprising then that some courts have found that many state law causes of action based on the safety and effectiveness of specifically regulated class III devices are preempted by the MDA. This case law, however, is inapposite to the class II prosthetic knee device in this case, which was not subject to such regulation.

Nor is the court persuaded by defendants' argument, again relying on case law involving class III devices, that although the FDA has not enacted specific regulations applicable to this prosthetic knee system, its class II designation is alone sufficient to trigger the preemption provision. On the contrary, as mentioned earlier, the implementing regulations are clear in that the MDA preempts state law only when "the [FDA] has established specific counterpart regulations or [when] there are other specific requirements

applicable to a particular device under the act." 21 C.F.R. § 808.1(d). Defendants' argument is, therefore, unsupportable as it is expressly contrary to the FDA's plainly stated regulations.

The court finds merit in defendants' suggestion that a regulatory scheme that requires the FDA to develop particularized regulations for each class II device before the preemption provision is operable is impractical and creates an unworkable burden on the FDA. Yet, these practical concerns are not for the courts to resolve. They are better left to the province of the regulators. The conclusion is inescapable, however, that given the clear language used by the FDA, this is the type of particularized regulatory scheme the FDA intended to establish. The court must give credence to it.

Finally, defendants argue alternatively that even though this device is not subject to specific safety regulations, it is nevertheless subject to MDA preemption because the device is "substantially equivalent" to a device that has already been marketed. Defendants' argument relies heavily on *English v. Mentor Corp.*, 1994 WL 263353, 1994 U.S.Dist. LEXIS 7941 (E.D.Pa. June 10, 1994).

The *English* case involved a manufacturer of a class III device who marketed a device pursuant to the substantial equivalence process. Under that process, if the Secretary of Health and Human Services finds that a class III device is substantially equivalent to a device already on the market, the manufacturer does not need to obtain independent pre-market approval for the newer device.

The *English* case is distinguishable, however, because these pre-marketing approval procedures are not required for and thus, are inapplicable to class II devices such as the prosthetic knee system at issue here. Even if they were applicable, however, nothing in the record suggest that the Secretary of Health and Human Services has ever issued an order finding that this particular device is substantially equivalent to a device already on the market.[1] Such an order that estab-

lishes substantial equivalence is required under the MDA. 21 U.S.C. § 360c(i)(1)(A). Therefore, the court finds that this argument is also without merit.

In summary, plaintiffs allege that the prosthetic knee device was defectively designed and manufactured and as a result it failed and caused Mr. Oliver's injury. As stated earlier, the MDA has not yet promulgated any performance standards, specific design regulations, or design requirements for this particular class II prosthetic knee system. Because the FDA has not done so, plaintiffs' state law tort claims are not preempted.

Moreover, the FDA has also made clear that the MDA's preemption clause does not preempt "[s]tate or local requirements of general applicability where the purpose of the requirement relates ... to other products in addition to devices (e.g., ... Uniform Commercial Code (warranty of fitness))." 21 C.F.R. § 808.1(d)(1). Therefore, the MDA does not preempt Mr. Oliver's breach of implied warranty claims because they arise under Pennsylvania's Uniform Commercial Code—a law of general applicability explicitly referenced in the regulations.

## IV.  *CONCLUSION*

The court finds that plaintiffs' state law claims are not preempted by the MDA. Defendants' motion for summary judgment is denied.

---

1.  Sally L. Maher, defendants' Regulatory Affairs Manager, only testified that in 1983, defendants were granted clearance to market certain prede-

cessor components of the subject prosthetic knee system.