**Tempie Fortson WORTHY, Appellant,**

v.

**COLLAGEN CORPORATION, Appellee.**

No. 05–94–01574–CV.

Court of Appeals of Texas, Dallas.

Oct. 31, 1995.

Opinion on Denial of Rehearing Feb. 12, 1996.

Michael M. Essmyer, Essmyer & Tritico, L.L.P., Houston, Clinard J. Hanby, The Woodlands, John M. O'Quinn, O'Quinn Kernesky McAninch & Laminack, Houston, for Appellant.

Joe W. Redden, Jr., Beck Redden & Secrest, Houston, for Appellee.

Before MALONEY, MORRIS and DEVANY, JJ.

## OPINION

MORRIS, Justice.

This summary judgment case presents an unanswered question of law. We decide

whether the Medical Device Amendments to the Federal Food, Drug, and Cosmetic Act preempt claims brought under the Texas Deceptive Trade Practices Act for damages allegedly resulting from an injection of a cosmetic material known as Zyderm.

In two points of error, Tempie Fortson Worthy complains about the trial court granting summary judgment in favor of Collagen Corporation (Collagen). She contends the trial court erred in concluding that the Medical Device Amendments (MDA) to the Federal Food, Drug, and Cosmetic Act (FDCA) preempt her claims against Collagen. In considering her points of error, however, we first must address whether Worthy has presented a sufficient record for us to review the trial court's judgment with respect to every claim she alleged against Collagen during this litigation. We conclude she has not. Worthy has presented a record sufficient for us to review only her claims asserted under the Texas Deceptive Trade Practices Act (DTPA). Therefore, we next address whether the MDA's specific preemption provision, as a matter of law, preempts Worthy's DTPA claims. We conclude it does. We do so after deciding that a regulation promulgated by the Food and Drug Administration (FDA) is inconsistent with congressional intent expressed in the MDA and, therefore, is not controlling. Accordingly, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

In February 1991, Worthy was injected with a cosmetic device known as Zyderm. Zyderm is a collagen implant material manufactured and distributed by Collagen. Worthy complained that she suffered injuries caused by the injected material. In October 1992, Worthy filed her original petition alleging various causes of action against Collagen. Collagen filed a motion for summary judgment urging that the MDA preempted Worthy's claims. In August 1993, the trial court granted Collagen an interlocutory summary judgment ordering that Worthy take nothing by the claims alleged in her original petition against Collagen.

Following rendition of the judgment, Worthy filed two amended petitions. In her second amended petition, Worthy alleged new causes of action against Collagen solely under the DTPA. These claims were not the subject of the interlocutory summary judgment. Collagen moved for summary judgment with respect to the DTPA claims asserting that the MDA also preempts those claims. In June 1994, the trial court granted Collagen a second and final summary judgment concluding that federal law preempted all claims asserted by Worthy, including those asserted in her second amended petition. Worthy perfected her appeal to this Court.

Initially, Worthy filed the original transcript of the case in this Court. The only petition contained in the original transcript was Worthy's second amended petition. Worthy later filed a motion for leave to file a supplemental transcript containing her original petition. In her motion, Worthy urged that the original petition was material to this appeal because it set forth the causes of action that were the subject of the trial court's first summary judgment. By signed order, this Court granted Worthy's motion. Nonetheless, a supplemental transcript containing Worthy's original petition was never filed.

## DISCUSSION

### Record on Appeal

■ An appellant bears the burden to present an appellate court with a sufficient record showing reversible error. TEX. R.APP.P. 50(d); *Bayoud v. Bayoud,* 797 S.W.2d 304, 313 (Tex.App.—Dallas 1990, writ denied); *Nix v. Fraze,* 752 S.W.2d 118, 120 (Tex.App.—Dallas 1988, no writ). Even where an appellant properly requests that all necessary items be included in the appellate record, an appellant still has the duty to be certain that everything material to her appeal is actually received by the appellate court. *Bayoud,* 797 S.W.2d at 313; *Nix,* 752 S.W.2d at 120. By failing to bring forth a sufficient record to show reversible error, an appellant waives any right to complain of the alleged error on appeal. *See Sunwest Reliance Acquisitions Group, Inc. v. Provident*

*Nat'l Assurance Co.*, 875 S.W.2d 385, 388 (Tex.App.—Dallas 1993, no writ).

█ In this case, the trial court rendered the two summary judgments at different times based upon different pleadings: Worthy's original petition and her second amended petition. The appellate record contains only Worthy's second amended petition. Worthy represented at oral argument that her second amended petition did not allege any of the causes of action raised in her original petition. A review of the second amended petition confirms that it contains claims solely under the DTPA.

As Worthy expressly claimed in her motion to file a supplemental transcript, her original petition is material to this appeal because it sets forth the causes of action that the trial court decided in its first summary judgment. Without Worthy's original petition, we are unable to determine what causes of action the trial court concluded to be preempted in its first summary judgment. We conclude, therefore, that we have an insufficient record to review the trial court's judgment on those claims alleged by Worthy in her original petition. Because Worthy did not provide a sufficient record, she has waived her right to complain of any error involving the issues resolved in the first summary judgment. We affirm, therefore, the trial court's take nothing judgment on the claims alleged by Worthy in her original petition.

We do have within the appellate record Worthy's second amended petition alleging claims under the DTPA. We also have Collagen's motion for summary judgment challenging the DTPA claims in addition to Worthy's response to Collagen's motion and the trial court's final judgment concluding that the DTPA claims are preempted by federal law. Therefore, we have a sufficient record to review the trial court's final summary judgment to the extent it decided the claims raised in Worthy's second amended petition. Consequently, our review is limited to the DTPA claims raised in Worthy's second amended petition as challenged by Collagen in its second motion for summary judgment, which Collagen designated as a "supplemental" motion.[1]

### The DTPA Claims

The United States Congress enacted the FDCA, delegating to the FDA the authority to promulgate regulations to enforce the FDCA.[2] In 1976, Congress enacted the MDA, amending the FDCA and granting the FDA comprehensive regulatory authority over certain medical devices. *See* Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. §§ 360c–360*l* (West Supp.1995). The MDA requires the FDA to classify medical devices intended for human use into one of three classes: class I, II, or III. 21 U.S.C.A. § 360c(b)(1). A class III medical device is subjected to an extensive and rigorous premarket approval process. *See* 21 U.S.C.A. § 360e. The MDA requires premarket approval for class III medical devices because such devices present "a potential unreasonable risk of illness or injury." 21 U.S.C.A. § 360c(a)(1)(C)(ii)(II). Once premarket approval has been given, federal regulations

1. The only grounds for and against summary judgment this Court will consider are those that were first presented to the trial court in Collagen's "supplemental" motion for summary judgment and Worthy's response thereto. *See Hall v. Harris County Water Control & Improvement Dist. No. 50*, 683 S.W.2d 863, 867 (Tex.App.—Houston [14th Dist.] 1984, no writ) (the appellate court may address on appeal only those grounds for summary judgment which were expressly presented to the trial court); *see also McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993). Although Collagen's motion for summary judgment addressing Worthy's second amended petition is labeled a "supplemental" motion, and therefore ostensibly incorporates the grounds for judgment and arguments made in its earlier motion, we conclude that Collagen's "supplemental" motion is a separate and independent motion. *See Llast v. Emmett*, 526 S.W.2d 288, 290 (Tex.Civ.App.—Tyler 1975, no writ) (in determining the nature of an instrument, we look at its substance and not its caption). At the time Collagen filed its "supplemental" motion for summary judgment, its previous motion for summary judgment had been ruled on. Therefore, there was no pending motion to supplement. *See Inman's Corp. v. Transamerica Commercial Fin. Corp.*, 825 S.W.2d 473, 478–79 (Tex.App.—Dallas 1992, no writ).

2. The FDCA authorizes the creation of regulations for the "efficient enforcement" of the Act. Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 371 (West 1972).

prohibit the device from being "manufactured, packaged, stored, labeled, distributed, or advertised in a manner that is inconsistent with any conditions to approval specified in the [premarket] approval order for the device." 21 C.F.R. § 814.80 (1993). It is undisputed that Zyderm, a material designed to be injected into the human body, is a class III medical device that received premarket approval.

■ The manner and extent to which a medical device is federally regulated leads to the question of whether a state may also regulate the device or whether the federal statute and regulations preempt, or in effect prevent, such state regulation. Significantly, the MDA contains a specific preemption provision. Section 360k(a) of the MDA states:

[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any matter included in a requirement applicable to the device under this chapter.

21 U.S.C.A. § 360k(a). Although the MDA's preemption provision has been addressed by courts in many other jurisdictions, no Texas appellate court has addressed the effect of the preemption provision on a claim asserted under the DTPA. After reviewing the relevant statutory and regulatory provisions, as well as case law from other jurisdictions, we conclude that section 360k(a) preempts Worthy's DTPA claims.

The scope of the MDA preemption provision is addressed in certain FDA regulations. Among these regulations is section 808.1(b). It states that the "requirements" referenced in section 360k(a) that are subject to preemption include state statutes, ordinances, regulations, and court decisions. 21 C.F.R. § 808.1(b). Section 808.1(d) sets forth examples of various state requirements that, in the opinion of the FDA, are *not* preempted. *See* 21 C.F.R. § 808.1(d). Among the examples listed is "State or local requirements of *general applicability* where the purpose of the requirement relates either to other products in addition to devices (e.g., requirements such as general electric codes, and the Uniform Commercial Code (warranty of fitness)), or to unfair trade practices in which the *requirements are not limited to devices.*" 21 C.F.R. § 808.1(d)(1) (emphasis added). Worthy relies on this language in the federal regulations to support her contention that section 360k(a) does not preempt her DTPA claims.

In particular, focusing on the language of section 808.1(d)(1), Worthy argues section 360k(a) does not preempt her claims under the DTPA because the DTPA is a state requirement of "general applicability" that is not "limited to devices." Therefore, urging the FDA's interpretation of the statute, she contends her causes of action should survive. Based upon the following analysis, we disagree.

■ The FDA's interpretation of the MDA is controlling only if it is not "inconsistent with clearly expressed congressional intent." *Hillsborough County v. Automated Medical Lab., Inc.*, 471 U.S. 707, 714, 105 S.Ct. 2371, 2376, 85 L.Ed.2d 714 (1985). If the intent is clear, this Court, as well as the FDA, must give effect to the unambiguously expressed intent of Congress. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). We conclude Congress's intent is clear. We also conclude the FDA's interpretation of section 360k(a) as set forth in section 808.1(d)(1) is inconsistent with that intent and, therefore, is not controlling.

■ In section 808.1(d)(1), the FDA interprets section 360k(a) to preempt only those state requirements that are limited specifically to medical devices. *See* 21 C.F.R. § 808.1(d)(1). Section 360k(a) states, however, that "any requirement" different from, or in addition to, a federal requirement is preempted when it "*relates to* the safety or effectiveness of the device or to any other matter included in a requirement applicable to a device under this chapter." 21 U.S.C.A. § 360k(a) (emphasis added). The term "relates to" sweeps broadly and encompasses all

state requirements that affect medical devices. *Accord Mitchell v. Collagen Corp.*, 870 F.Supp. 885, 892 (N.D.Ind.1994), *aff'd*, 67 F.3d 1268 (7th Cir.1995).

The United States Supreme Court has addressed the scope of the term "relates to" in connection with other preemption provisions. In each case the Supreme Court has found state law preempted where it has a connection with or reference to a preemptive plan. *See Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 482–83, 112 L.Ed.2d 474 (1990) (ERISA); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 386, 112 S.Ct. 2031, 2038, 119 L.Ed.2d 157 (1992) (Airline Deregulation Act of 1978). Indeed, a law may "relate to" a preemptive plan, and therefore be preempted, "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand*, 498 U.S. at 139, 111 S.Ct. at 483.

In her second amended petition, Worthy alleges causes of action under the DTPA, claiming that Collagen misrepresented Zyderm as safe when, in fact, the product is defective and not fit for the ordinary purpose for which it is to be used. Worthy's claims go to the safety and effectiveness of Zyderm. Although the DTPA is not specifically directed at medical devices, if Worthy's claims were successful, Collagen would be forced either to meet requirements different from or in addition to the premarket approval requirements or be subjected to DTPA liability. In this case, the DTPA claims clearly "relate to" the safety and effectiveness of the medical device. Guided by United States Supreme Court decisions addressing the scope of the term "relates to," which is the language used in section 360k(a), we conclude the FDA's interpretation of section 360k(a) is

not a reasonable interpretation because it is inconsistent with expressed congressional intent. That expressed intent encompasses a broader scope for the MDA than interpreted by the FDA. Accordingly, the regulation is not controlling. Section 360k(a), therefore, preempts Worthy's DTPA claims. To conclude otherwise would negate the purpose of section 360k(a) and allow states to regulate class III medical devices freely through laws of "general applicability." [3]

In her response to Collagen's second motion for summary judgment, Worthy characterizes her DTPA claims as state tort law claims. She contends that this Court should follow the guidance of the Texas Supreme Court in *Moore v. Brunswick Bowling & Billiards Corp.*, 889 S.W.2d 246 (Tex.), *cert. denied*, ── U.S. ──, 115 S.Ct. 664, 130 L.Ed.2d 599 (1994), and hold that section 360k(a) does not apply to state tort law. In *Moore*, the court concluded that the preemption provision of the Federal Boat Safety Act did not preempt state common-law tort claims. In doing so, the court recognized that "jury awards can have an effect akin to regulation" and "[t]he obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Id.* at 249. The court held, however, that Congress's intent to preempt state common law was not "clear and manifest" in the Federal Boat Safety Act. This was due, at least in part, to the fact that the Federal Boat Safety Act itself contains a savings clause expressly preserving state common-law claims. *See id.* at 250.

The *Moore* decision is distinguishable when applied to this case. First, and perhaps most importantly, the MDA, unlike the Federal Boat Safety Act, does not contain a

---

**3.** There is a split of authority regarding the reasonableness of the FDA's interpretation of section 360k(a) as set forth in section 808.1(d)(1). *See, e.g., King v. Collagen Corp.*, 983 F.2d 1130, 1139 (1st Cir.), *cert. denied*, ── U.S. ──, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993) (when statute is clear, agency interpretation must give way); *Talbott v. C.R. Bard, Inc.*, 865 F.Supp. 37, 49 (D.Mass.1994), *aff'd*, 63 F.3d 25 (1st Cir.1995) (808.1(d)(1) conflicts with clear intent of congress); *Mitchell v. Collagen Corp.*, 870 F.Supp. 885, 892–93 (N.D.Ind.1994), *aff'd*, 67 F.3d 1268 (7th Cir.) (808.1(d)(1) is contrary to Congress's

intent); *see contra Ministry of Health v. Shiley*, 858 F.Supp. 1426, 1435–36 (C.D.Cal.1994) (citing 808.1(d)(1) as authority); *Mulligan v. Pfizer, Inc.*, 850 F.Supp. 633, 635 (S.D.Ohio 1994) (FDA's interpretation in 808.1(d)(1) is reasonable); *Oliver v. Johnson & Johnson, Inc.*, 863 F.Supp. 251, 255 (W.D.Pa.1994) (claims under Pennsylvania's Uniform Commercial Code not preempted pursuant to 808.1(d)(1)). We consider the cases concluding section 808.1(d)(1) is inconsistent with congressional intent to be more persuasive.

savings provision.[4] Second, the preemption provision addressed by the court in *Moore* does not contain the "relates to" language found in section 360k(a).[5] As discussed above, this phrase indicates that Congress intended the MDA preemption provision to be broad in scope. Third, the court in *Moore* addressed the preemption of state common law and not a state statutory remedy such as the DTPA. The court noted specifically that the regulatory effect of the common law is not as direct as that of positive enactments. *Id.*

Moreover, numerous courts addressing the issue of the MDA's preemption of state tort liability have concluded that tort liability constitutes a "requirement" as contemplated in section 360k(a). *See, e.g., Mendes v. Medtronic, Inc.,* 18 F.3d 13, 18 (1st Cir.1994); *Stamps v. Collagen Corp.,* 984 F.2d 1416, 1421 (5th Cir.), *cert. denied,* 510 U.S. 824, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993); *Slater v. Optical Radiation Corp.,* 961 F.2d 1330, 1332–33 (7th Cir.), *cert. denied,* 506 U.S. 917, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992). In *Stamps,* the Fifth Circuit concluded that Texas tort liability would constitute a requirement different from, or in addition to, the premarket approval requirements applicable to Zyderm. *Stamps,* 984 F.2d at 1421. We agree. This conclusion is supported by the fact that the FDA, whose guidance Worthy previously urged us to follow, has concluded that the scope of preemption under section 360k(a) includes statutes, ordinances, regulations, and court decisions. *See* 21 C.F.R. § 808.1(b). Nothing in *Moore* dictates a contrary conclusion.

We hold that section 360k(a) preempts Worthy's DTPA claims. We overrule Worthy's first and second points of error. We affirm the trial court's judgment.

**4.** Although Worthy argues that section 360h(d) of the MDA constitutes a savings provision, this argument was not presented to the trial court. Therefore, we do not address it here. *Hall,* 683 S.W.2d at 867.

**5.** The relevant portions of the Federal Boat Safety Act preemption provision read as follows:

DEVANY, Justice, concurring.

Tempie Fortson Worthy appeals the trial court's granting of Collagen Corporation's motion for summary judgment. The trial court ruled that all claims and causes of action asserted by Worthy, including those asserted in her second amended petition, are preempted by federal law. In two points of error, Worthy contends that the trial court erred in granting Collagen Corporation's motion for summary judgment and in holding that the federal Medical Devices Act preempted her State law claims.

Worthy has brought her appeal with less than a full record of the proceedings in the trial court. An appellant bears the burden to present the appellate court with a sufficient record showing reversible error. Tex. R.App.P. 50(d); *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 689 (Tex.1990); *Christiansen v. Prezelski,* 782 S.W.2d 842, 843 (Tex.1990); *Sunwest Reliance Acquisitions Group v. Provident Nat'l Assurance,* 875 S.W.2d 385, 388 (Tex.App.—Dallas 1993, no writ); *Bayoud v. Bayoud,* 797 S.W.2d 304, 313 (Tex.App.—Dallas 1990, writ denied). Without a record sufficient to show reversible error, an appellant waives any right to complain of the alleged error on appeal. *See Sunwest,* 875 S.W.2d at 388. Even where an appellant properly requests that all necessary items be included in the record, the appellant still has the duty to be certain that all requested items are actually received by the appellate court. *Bayoud,* 797 S.W.2d at 313. The failure to present a sufficient record requires the appellate court to presume that the omitted portions of the record support the trial court's ruling. *DeSantis,* 793 S.W.2d at 689; *AAA Rapid Concrete Serv. v. Woods,* 818 S.W.2d 178, 180 (Tex.App.—Houston [14th Dist.] 1991, no writ); *Bayoud,* 797 S.W.2d at 313.

... [A] State or political subdivision of a State, may not establish, continue in effect, or enforce a law or regulation establishing a recreational vessel or associated equipment performance or other safety standard or imposing a requirement for associated equipment ... that is not identical to a regulation prescribed under section 4302 of this title.
*Moore,* 889 S.W.2d at 248.

The incomplete record becomes apparent in this case because the trial court's final order granted the motion for summary judgment holding that federal law preempted *all* claims asserted by Worthy, including those asserted in her second amended petition, implying that other claims were asserted in prior pleadings not in the record before us. An examination of the record reveals that Worthy's only pleading in the record before this Court, her second amended petition, alleges only a claim under the Texas Deceptive Trade Practices Act (DTPA).

Therefore, we cannot determine what Worthy refers to when she claims the court erred in denying *all of her tort actions.* If she pled other tort actions in her operative pleading, she would have waived those other actions by filing her second amended petition containing *only* a DTPA complaint. By failing to provide this Court with her original pleadings, upon which the trial court based its judgment, Worthy has waived any error by the trial court on appeal as to other tort claims. Yet, Worthy has asked this Court to decide that the federal Medical Devices Act does not preempt *any* Texas tort law claim or that it preempts *all* Texas tort law claims. We cannot render such a decision because it would constitute an advisory opinion. Neither the Texas Constitution nor the Texas Legislature has vested this Court with the authority to render an advisory opinion. *See* TEX. CONST. art. II, § 1; *Camarena v. Texas Employment Comm'n,* 754 S.W.2d 149, 151 (Tex.1988).

Therefore, Worthy's failure to present this Court with a sufficient record to show reversible error waives any right to complain of any alleged error with regard to all tort actions except the one action she has preserved on appeal, to-wit: the DTPA claim. *See Sunwest,* 875 S.W.2d at 388. In the absence of a sufficient record as to those other tort claims, a presumption exists in favor of the trial court's judgment, hence, such judgment will not be disturbed as to those other tort claims. *See Woods,* 818 S.W.2d at 180.

As to Worthy's DTPA claim, I conclude that federal law operates in this instance to establish that Collagen did not misrepresent its product by deception since Collagen's motion for summary judgment is supported by summary judgment evidence that it followed the mandates of the Medical Device Act in the advertising and labeling of the complained-of product. Therefore, I would specifically overrule Worthy's two points of error as to her DTPA claim, and affirm the judgment.

## FACTS

In February, 1991, a medical doctor injected Worthy with Collagen Corporation's cosmetic medical device, Zyderm. Zyderm is a processed bovine product marketed for "soft tissue augmentation" for facial defects. Worthy complains that, thereafter, she developed a severe reaction to the injected material, which required reconstructive plastic surgery on her face and immune-suppressant drugs to control the reaction systemically. Zyderm was approved for marketing in 1981 by the FDA pursuant to Pre–Marketing Application procedures of the Medical Device Amendments of 1976.

Congress enacted the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301, *et seq.,* granting the FDA comprehensive regulatory authority over medical devices. By its terms, the MDA applies solely to medical devices; it does not regulate drugs, cosmetics, foods or other products. Section 360k(a) of the MDA expressly provides as follows:

> Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
>
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

The MDA requires that the FDA classify each medical device intended for human use into Class I, II, or III. 21 U.S.C. § 360c(b)(1). Only class III devices require premarket approval. 21 U.S.C. § 360e. The

stated purpose of premarket approval is to enable the FDA to determine whether a proposed Class III device provides reasonable assurance of safety and effectiveness in its use. There is a rigorous approval process provided for in the federal law. Once a device has been approved for marketing, federal regulations prohibit the device from being "manufactured, packaged, stored, labeled, distributed, or advertised in a manner that is inconsistent with any conditions to approval specified in the PMA approval order for the device." 21 C.F.R. § 814.80. The FDA classified Zyderm as a Class III medical device and, consequently, required Collagen Corporation to obtain FDA approval of Zyderm's safety and effectiveness before marketing the product. The summary judgment proof establishes that Collagen's product, Zyderm, has met all the requirements of the applicable federal law.

## APPELLANT'S ARGUMENTS UNDER DTPA

Worthy's brief presents arguments that conclude that her "state tort law claims are not preempted by the Medical Device Amendments of 1976 ("MDA") to the Food, Drug and Cosmetic Act." Thus, her brief, for the main part, fails to specifically address her claims under the DTPA. However, she does provide some guidance in her appeal as to her DTPA claim by stating in one paragraph of her brief that the DTPA is an unfair trade practices law of general applicability and is explicitly not preempted by the federal MDA of 1976. Worthy cites *Bollier v. Medtronic, Inc.*, No. H–92–2439, 1993 WL 734843 (S.D.Tex.1993), as a case that the *appellee* might cite as one where a local federal judge has preempted DTPA claims under the Medical Devices Act (MDA). Having cited that case, Worthy immediately distinguishes *Bollier* because the plaintiff in that case failed to raise the exclusions contained in 21 C.F.R. 808.1(d)(1). Worthy then draws the conclusion that FDA regulations hold that Worthy's DTPA claims are not preempted. The law that Worthy cites is as follows:

> Section [360k(a) ] does not preempt State or local requirements of general applicability where the purpose of the requirement relates either to other products in addition to devices (e.g., requirements such as general electrical codes and the Uniform Commercial Code (warrant of fitness)), or to unfair trade practices in which the requirements are not limited to devices.

21 C.F.R. § 808.1(d)(1).

## STATE STATUTES OF GENERAL APPLICABILITY

It appears that federal regulations under the MDA provide that the MDA preempts state statutes which would alter explicit requirements of the MDA, but do not preempt such statutes of general applicability. The federal plan gleaned from Congressional intent as to medical devices is to carefully regulate the testing, sale, and distribution of medical devices.

Once a product is determined to be subject to the control of the MDA, it is subjected to vigorous tests and labeling as prescribed by the MDA. Any further specific requirements of any state are preempted in order to maintain uniformity in the testing, sale, and distribution of medical devices throughout the nation.

However, while a state may not impose further restrictions on the testing, advertising, and labeling of particular products, which would be by statutes of specific applicability, the regulations do allow states to pass laws of general applicability.

For example, if the federal government were to require wiring for homes to be of a certain composition for the safety of people and their homes throughout the nation, the states presumably would not be permitted to change such specifications. The reasoning would simply be to enable standardization of home wiring for all purposes. However, I see no prohibition against a state passing a law of *general applicability* that would require that all home-wiring had to be run through PVC tubing to protect the wire from accidental damage. Such a state statute would appear to be one of general applicability that would not change the federal mandate on the composition of wiring.

## DECEPTIVE TRADE PRACTICES ACT (DTPA)

Texas adopted the DTPA statute a number of years ago for the protection of consumers generally. That statute is nothing more than a restatement of certain existing common law that allows a consumer to bring an action against a vendor who violates a specific common law tort, such as deceptive or misleading advertising or false labeling that lures consumers by misrepresentation; the DTPA further embodies an existing common law contract remedy for breach of warranty. The DTPA specifies its own special measure of damages for a violation of specific "DTPA" violations. Therefore, I would hold that the Texas DTPA statute is one of general applicability.

However, where a DTPA claim is based upon false advertising and labeling, that specific claim must fail if the complained-of advertising or labeling was prescribed by the federal government under the MDA because the vendor has no control over the advertising and labeling. This would be so because of the vendor's compliance with a federal statute.

In Worthy's second amended petition, she specifically complained that Collagen made representations that were false and misleading, yet the summary judgment evidence establishes that the representations were mandated under the federal law.

Collagen's Motion for Summary Judgment provided summary judgment proof that it manufactured, labeled, and distributed Zyderm in accordance with the mandates of the MDA. Collagen cannot be held responsible for compliance with those mandates. Collagen provided adequate summary judgment proof to support its compliance with the federal law.

Therefore, because Collagen complied with federal law in its labeling and advertising, it cannot be guilty of misleading Worthy since Collagen had no control over the representations made. My concern is that the order of the court held that the DTPA claim of Worthy was preempted by federal law. As a general statement, I would disagree and hold that the DTPA is a statute of general applicability and is not preempted by the applicable federal law. For example, a DTPA claim of breach of warranty that is based upon a guarantee of performance might very well be the basis of a State action unless the complained of warranty was specifically part of the MDA mandated advertising, which is doubtful since the federal law is designed to protect consumers, not suggest guaranteed results.

My examination of the federal law applicable in this case, when read in context with other sections, makes it clear that State law that would alter the general requirements of a product that comes under the jurisdiction of the MDA will be preempted when such requirements have the effect of establishing a different or additional requirement applicable to a specific device. The following regulation is on point:

> Generally, section [360k(a)] does not preempt a State or local requirement prohibiting the manufacture of adulterated or misbranded devices. Where, however, such a prohibition has the effect of establishing a substantive requirement for a specific device, e.g., a specific labeling requirement, *then the prohibition will be preempted* if the requirement is different from, or in addition to, a Federal requirement established under the act.

21 C.F.R. § 808.1(d)(6)(ii). (Emphasis added.)

Worthy's lawsuit brought under the DTPA, a statute of general applicability, is not preempted per se, but her specific complaint about the statements made by Collagen as being misrepresentations must fail since Collagen has followed the mandated requirements of the federal law. Since Collagen had no authority to use different language, Worthy's *complaint* is preempted by the federal mandate. The word *preempted* has developed several meanings in law since its first use in English International law, but the word pertains to a first or prior right, or to take precedence. *See* BLACK'S LAW DICTIONARY 1177 (6th Ed.1990). In the instant case, the representations made by Collagen met the requirements of federal law and

must take precedence over any State test that would find such representations false.

Worthy's claim is that Zyderm's label should have contained specific additional warnings, which would have altered the federal requirements about the product, and, therefore, such additional warnings are preempted by the federally prescribed label. Worthy charges that Zyderm should have been designed, manufactured or marketed in a different manner and that it should not have been marketed at all. Hence, Worthy's complaint seeks to impose additional or different requirements applicable to a device within the meaning of § 360k(a) and 21 C.F.R. § 808.1(d).

Collagen cites a number of cases from across the nation which have specifically held that similar state law causes of action involving Zyderm are preempted by the federal law. Those cases include: *Mitchell v. Collagen Corporation*, 870 F.Supp. 885 (N.D.Ind. 1994), *aff'd*, 67 F.3d 1268 (7th Cir.1995), which involves the Indiana Deceptive Consumer Sales Act, which held that said act was preempted by the MDA; and *Tucker v. Collagen Corporation*, No. 93 C 2375, 1994 WL 87367 (N.D.Ill. March 16, 1994), which involves a strict liability law of Illinois, which held that said law was preempted by the MDA. Similar holdings in other states cover this area. *See, e.g., Anguiano v. E.I. Du Pont De Nemours & Co.*, 44 F.3d 806 (9th Cir.1995).

I am not in full accord with those cases insofar as they hold that a statute such as the DTPA statute of Texas is per se preempted by the federal law. I would limit our holding to the facts of this case as I have stated.

Therefore, I would overrule Worthy's two points of error in accordance with this opinion.

I agree that the judgment of the trial court should be affirmed.

## OPINION ON MOTION FOR REHEARING

MORRIS, Justice.

In a timely filed motion for rehearing, Tempie Fortson Worthy asks us to reconsider our opinion issued in this case. We have previously concluded that Worthy failed to provide us with a sufficient record to review any claims other than those set forth in her second amended petition. Worthy now contends, among other things, that the record is sufficient for us to review all her claims or, in the alternative, she should be allowed to supplement the record. In connection with the latter argument, Worthy has filed a motion for leave to file a post-submission supplemental transcript. We deny both Worthy's motion for rehearing and motion for leave. We write separately to address Worthy's arguments regarding her failure to provide us with a sufficient record.

In our initial opinion, we concluded Worthy failed to provide us with a sufficient record for review because the transcript did not contain her original petition setting forth the specific causes of action upon which the trial court rendered its first summary judgment. The transcript contained only Worthy's second amended petition in which she alleged claims solely under the Texas Deceptive Trade Practices Act (DTPA). The trial court signed a second summary judgment disposing of these claims.

■ Worthy argues the record is adequate to present the claims raised in her original petition because the claims are "listed" in Collagen Corporation's (Collagen) motion for summary judgment, which is included in the appellate transcript. Worthy additionally points out that the claims are listed in her brief and this listing is not disputed by Collagen. Although there may be instances where we could review claims listed only in a motion for summary judgment, in this case a mere listing of claims is not sufficient to present the claims for review.

The issue presented on appeal was whether the Medical Device Amendments (MDA) to the Federal Food, Drug, and Cosmetic Act preempted Worthy's state law claims. The "list" of the claims purportedly set forth in Worthy's original petition provides us only with the general, descriptive names of the causes of action pleaded. In particular, Collagen's motion for summary judgment describes Worthy's causes of action as negli-

gence, gross negligence, breach of warranty, strict liability, failure to warn, and fraud in obtaining FDA approval. This list, as contrasted with a pleading made in accordance with well recognized rules of procedure, does not inform us about the specific allegations upon which the claims are based. Without the nature of the allegations supporting the claims before us, any preemption analysis would have to be founded on a "blanket" preemption theory. For example, we would necessarily have to conclude either that all negligence claims are barred or that no negligence claims are barred. Worthy specifically urges us not to apply a blanket preemption analysis, and we agree such an analysis would be inappropriate.

■ The language of the MDA's preemption provision is broad but not unlimited. *See* Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 360k(a) (West Supp.1995). A state tort claim is preempted only if: (1) the FDA has established regulations specifically applicable to the medical device at issue; (2) the state law claim would impose a requirement different from, or in addition to, the FDA regulations; and (3) the claim relates to the safety and effectiveness of the device or any matter included in a requirement applicable to the device under the MDA. *Accord, Martello v. Ciba Vision Corp.,* 42 F.3d 1167, 1168 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995). Due to the extensive nature of the premarket approval process, many claims pertaining to Class III medical devices may be preempted. However, there is still the possibility that, based upon the specific facts underlying the claim, one of the three prongs of the test will not be met. To determine how a claim relates to an FDA regulation or requirement, we must review the nature of the allegations specifically supporting the claim asserted. Not to do so would cause us to venture into giving prohibited advisory opinions.

Furthermore, many courts have acknowledged the possibility that certain state-law tort claims will survive preemption. *See, e.g., Duvall v. Bristol–Myers–Squibb, Co.,* 65 F.3d 392, 400 (4th Cir.1995) (although MDA preempts express warranty claims based on FDA–mandated labeling, packaging, and ad-

vertising, it does not preempt express warranties based on manufacturer's voluntary representations), *petition for cert. filed,* 64 U.S.L.W. 3439 (U.S. Dec. 22, 1995) (No. 95–1010); *King v. Collagen Corp.,* 983 F.2d 1130, 1135 (1st Cir.) (MDA does not preempt claims such as negligent implantation or removal of devices or claims arising out of contaminated devices), *cert. denied* 510 U.S. 824, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993). The distinctive feature of a surviving claim is not its label but its factual basis. For example, an analysis of a claim for negligent implantation of a medical device differs greatly from an analysis of a claim for negligent misrepresentation of a device's effectiveness, although both claims may fall under the label of "negligence." Therefore, although Worthy points to lists of claims contained in the record, these lists do not provide us with a sufficient basis for a complete review in this case.

Worthy next contends the record is adequate to inform us of the claims raised in her original petition because, as she now maintains, the claims are realleged in her second amended petition. Significantly, Worthy's counsel expressly stated during oral argument that the second amended petition did not allege any of the causes of action raised in Worthy's original petition. As we stated in our initial opinion, Worthy's second amended petition appears to allege claims only under the DTPA. We will not now accept Worthy's convenient recharacterization of her pleadings solely to avoid the consequences of her failure to provide us with a sufficient record.

■ Alternatively, Worthy requests permission to file a supplemental transcript containing her original petition. It is well settled that a request to file a post-submission supplemental transcript should not be granted, absent some unusual circumstances, after the appellate court has issued its opinion and rendered its judgment. *Irrigation Constr. Co. v. Motheral Contractors, Inc.,* 599 S.W.2d 336, 344 (Tex.Civ.App.—Corpus Christi 1980, no writ); *Archer v. Storm Nursery, Inc.,* 512 S.W.2d 82, 83 (Tex.Civ.App.—San Antonio 1974, no writ). To allow such post-judgment filings would serve only to waste judicial

resources, interfere with the orderly administration of appellate review, and impair the principle of finality of judgments.

Worthy has made no showing of any unusual circumstances that would justify allowing her to supplement the record at this late date. Indeed, Worthy does not even attempt to explain her failure to include her original petition in the appellate record prior to submission of the case. It is clear that Worthy was aware of the absence of the pleading because she asked this Court before submission for leave to file a supplemental transcript containing her original petition. In her original motion for leave, Worthy specifically stated that her original petition was material to her appeal. As requested, we granted Worthy leave to file a supplemental transcript containing her original petition, but she never did so. As we stated in our initial opinion, it is the appellant who bears the burden of ensuring a sufficient record on appeal. *See Bayoud v. Bayoud,* 797 S.W.2d 304, 313 (Tex.App.—Dallas 1990, writ denied).

Worthy relies solely on *Silk v. Terrill,* 898 S.W.2d 764 (Tex.1995), to support her present request to supplement the record. Worthy appears to read *Silk* as broadly requiring that leave be granted upon any request for post-submission supplementation.

At issue in *Silk* was whether the record was insufficient for appellate review because of the absence of an affidavit filed in a summary judgment proceeding. The appeals court concluded the record was insufficient, declined to reach the merits of the case, and denied the appellant's post-submission request to supplement the record. The supreme court held that it was an abuse of discretion not to allow a post-submission supplementation of the appellate record with the missing affidavit. The supreme court's ruling was based on the following: (1) the contents of the omitted affidavit were never at issue because appellee conceded the affidavit negated every element of her claim; (2) the omitted affidavit was not material to a decision on the merits; and (3) the appeals court was provided with a copy of the omitted affidavit before issuing its opinion. *Id.* at 766. The supreme court, therefore, remanded the case to the appeals court for consideration of the merits. *Silk* is inapposite to the facts of this case.

As discussed above, the contents of Worthy's original petition are central to a preemption analysis because it is the petition that sets forth the specific allegations underlying each of her claims. Unlike *Silk,* we have no concessions by the appellee that would inform us of the substance of the missing pleading or make the missing pleading unnecessary to a decision on the merits. Furthermore, Worthy never provided us with a copy of her original petition, even improperly filed, before we issued our opinion and rendered judgment on the appeal presented at submission. Indeed, Worthy failed to provide us with a copy of her original petition even after obtaining specific leave to do so.

We deny Worthy's motion for rehearing. We also deny her motion to file a post-submission supplemental transcript.